# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHISN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

JOSEPH WILSON,

    PLAINTIFF,

v.                                        CIVIL ACTION NO.:

BELL STEEL COMPANY

    DEFENDANT.

_____/

## COMPLAINT

Plaintiff, Joseph Wilson, (hereinafter referred to as the "Plaintiff" or "Wilson"), by and through his undersigned attorney, sues the Defendant, Bell Steel Company, (hereinafter referred to as the "Defendant" or "BS"), and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action for disability discrimination under the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008; Family Medical Leave Act, Florida Private Sector Whistle-blower Act, *Fla. Stat. Sections* 448.101—448.105 and Workers' Compensation Law. FLA. STAT. § 440.205.

## JURISDICTION AND VENUE

2. The jurisdiction of the Court over this controversy is invoked pursuant

to 29 U.S.C. § 2617(a)(2); 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f).

3. Defendant is considered an employer within the terms and conditions of the FMLA. Defendant employs fifty (50) or more employees within 75 miles of the worksite of Plaintiff.

4. Plaintiff worked for Defendant from November 4th, 2014, until his involuntary termination on March 1st, 2018. Plaintiff is considered an "eligible employee" for purposes of the FMLA as he has been employed: (1) for at least 12 months by Defendant, and (2) for at least 1,250 hours of service with Defendant in the previous 12-month period.

5. The FMLA does not contain an exhaustion requirement and Plaintiff is not required to exhaust administrative remedies before bringing suit.

2. Plaintiff further seeks declaratory, injunctive, and equitable relief pursuant to 28 U. S. C. §§ 2201, 2202 and 42 U.S.C. § 2000e-5(g).

3. Costs and attorney's fees are sought pursuant to 42 U.S.C. §2000e-5(k), Fed. R. Civ. P. 54 and other Florida Statutes as set forth herein.

4. This action lies in the Northern District of Florida, Pensacola Division, pursuant to 29 U.S.C. § 1391(b), because the action arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices were committed in this judicial district.

5. Plaintiff has complied with all conditions precedent to the filing of

this suit.

6. All conditions precedent and administrative remedies have been exhausted and jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f). Plaintiff filed his Charge of Discrimination with the Florida Commission on Human Relations ("FCHR" - No.: 201807561), which was also duel filed with the United States Equal Employment Opportunity Commission ("EEOC" - No.: 15D-2018-00580), on April 4, 2018. Plaintiff received his 90 day Right to Sue letter on April 1, 2019.

## PARTIES

7. Plaintiff is a Caucasian male who resides in Pensacola, Florida. He was employed by the Defendant from November 4, 2014 until the involuntary termination of his employment on March 1, 2018.

8. Defendant, Bell Steel Company, is an AISC Certified steel fabricator located in Pensacola, Florida. Founded in 1958, Defendant employs more than 50 employees and is an employer within the meaning of ADA, FLMA, FPSWBA and FWCA.

## FACTS

9. Plaintiff is a 39 year old Caucasian male.

10. Plaintiff was employed by Bell Steel Co. on or about November 4, 2014, as a certified welder working second shift 3pm to 12am Monday-Thursday

and 12pm to 6pm on Fridays.

11. Plaintiff remained employed by Defendant until his unlawful termination on March 1, 2018.

12. Plaintiff performed the duties and responsibilities of this position in a more than satisfactory manner.

13. During Plaintiff's employment he started to get sick with migraines and respiratory infections.

14. At the end of 2017, the migraines and respiratory infections started becoming more consistent and severe.

15. Plaintiff informed his supervisor, Tim Milner, of his health problems as he became progressively more consistent and severe.

16. On Tuesday 10/10/17, Plaintiff was out of work and treated at West Florida Immediate Care for a respiratory infection and returned to work Thursday 10/12/17 with a doctor's note.

17. Plaintiff told his supervisor, Tim Milner, his migraines and respiratory infections were from the exposure to the welding fumes and that he was still sick.

18. Between October 16th and 20th 2017, Plaintiff's migraines and respiratory issues continued to get worse.

19. On October 17, 2017, Plaintiff went back to West Florida Immediate

Care for additional treatment.

20. Plaintiff again notified Tim Milner of his condition and that migraines and respiratory issues continued to get worse.

21. When Plaintiff returned to work on Monday 10/23/17, he was given about a half hour lecture from Mr. Milner about all of his absences from work and was threatened with disciplinary action.

22. Plaintiff again, explained to Mr. Milner that he was having severe respiratory problems and migraines from the welding fumes.

23. Between January 16-18, 2018, Plaintiff had a migraine, he notified Mr. Milner who informed Plaintiff that he could not return to work without a doctor's note.

24. Plaintiff could not get in with his primary doctor until the 1/18/18 and was released back to work on the 01/19/18.

25. On 1/19/2018 when Plaintiff returned to work with the doctor's note, he was again threatened with disciplinary action and/or termination by Mr. Milner "if he did not get his priorities straightened out."

26. Plaintiff again notified Mr. Milner that he was very sick and suffering from respiratory problems and migraines from working around the welding fumes.

27. On 01/22/18, Plaintiff was still very sick and went to an urgent care center and was out of work until 01/31/18.

28. When Plaintiff returned to work with a doctor's note, he was written up by the superintendent of the company, Kris Saldino, with a disciplinary action.

29. At that time Mr. Saldino informed Plaintiff that from this point forward, he could not miss more than 3 days of work within a 90 day period.

30. Plaintiff was also told that he was being moved from the west shop to the east shop to work so that the supervisors could watch over him after informing them again of his health concerns from the welding fumes.

31. On Monday 02/05/18, Plaintiff went to Baptist Hospital Emergency Room and was diagnosed with pleurisy.

32. Plaintiff again notified his employer of his emergency room visit and of his medical diagnosis of pleurisy and that he believed that it was related to his working conditions.

33. On 02/08/18, Plaintiff was notified that he could not return to work until he submitted a drug screen at LabCorp.

34. Plaintiff believed that the request for a drug screen was retaliatory, yet on 02/09/18, Plaintiff went to LabCorp to take the drug test.

35. Plaintiff was still not feeling good but he was in fear of losing his job, so returned to work that afternoon after the drug screen.

36. On Wednesday 02/28/18, Plaintiff came down with a severe migraine and notified Mr. Milner that he was unable to come to work.

37. When Plaintiff returned to work on Thursday 03/01/18, he was terminated by Kris Saldino.

38. Mr. Saldino told Plaintiff, "Ill or not you've missed too many days".

39. Defendant has had knowledge of Plaintiff's disabilities, respiratory problems and migraines, since October 2017, when he informed Defendant that he suffered from migraines, respiratory problems, stress and fatigue.

40. Both Plaintiff's supervisors, Mr. Milner and Mr. Saldino were aware of his disability.

41. Plaintiff is a qualified individual with a disability:

    (a) he has a physical and/or mental impairment that substantially limits one or more major life activities: he suffers from migraines, respiratory problems, stress and fatigue;

    (b) Plaintiff is under doctor's care for treatment of his physical disabilities.

    (c) he has a record of such impairment; and,

    (d) he was regarded by his employer as having impairments.

37. Plaintiff's disabilities substantially affect the major life activities of sleeping, concentration and mobility.

38. Plaintiff had the ability to perform the essential functions of his position with or without a reasonable accommodation at the time of his request for

7

accommodation.

42. Defendant knew of Plaintiff's medical condition and refused to discuss any type of accommodation, FMLA leave or acknowledge that his migraines and respiratory condition were related to his working environment.

43. Defendant acquired more than sufficient knowledge that Plaintiff's absences were for an FMLA-qualifying reason.

44. Defendant's supervisors, Mr. Milner and Mr. Saldino, nor Defendant's HR department ever notified Plaintiff of his eligibility to take FMLA leave.

45. Mr. Milner knew or should have known that Plaintiff's medical conditions were or could have been qualified under the FMLA as he had extensive personal knowledge of the FMLA and the Defendant's FMLA policies and procedures.

46. Plaintiff reported on multiple occasions in January and February of 2018 that the working conditions were unsafe and asked for personal protective equipment (PPE).

47. Plaintiff's requests were refused or later ignored by Defendant's supervisors.

48. When Plaintiff reported to Mr. Milner and Mr. Saldino that he believed that his medical conditions were related to the welding fumes and other

substances he was being exposed to, Plaintiff's reported injuries were not reported on the OSHA 300 logs by Mr. Saldino and Plaintiff was told it was not work related.

## FIRST CAUSE OF ACTION
(ADA-Disability Discrimination)

49. Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 48 of this complaint with the same force and effect as if set forth herein.

50. This is an action to remedy discrimination on the basis of Plaintiff's disability in the terms, conditions, and privileges of his employment with Defendant in violation of the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

51. At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

52. At all times material hereto, Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, as the Defendant employed more than 15 employees.

53. Any possible assertion that there was a viable business justification for the Plaintiff's termination, is entirely *pretextual* for Defendant's retaliation and discrimination against him for engaging in a protective activity and for any actual or perceived disability.

54. The adverse personnel action, the termination of Plaintiff's employment clearly violated Plaintiff's right under the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008, and such action clearly constituted a prohibited employment practice, contrary to the public policy of the ADAA.

55. As a result of the Defendant's violations of the Americans with Disabilities Act and Amendments, the Plaintiff has been substantially damaged, in that he has lost wages, associated job benefits; and in addition, he has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory demotion that lead to her discharge from Defendant's employment.

56. As a result of wrongfully and unlawfully retaliatory actions that lead to his discharge from Defendant's employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

57. Plaintiff has retained the undersigned attorney to assist him, in the prosecution of this action, and he is obligated to pay said attorney a reasonable fee for his professional services.

58. Plaintiff is entitled to recovery of reasonable attorney's fees and costs pursuant to Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; the Americans with Disabilities Act Amendments of 2008.

## SECOND CAUSE OF ACTION
*(FLA. STAT. § 440.205 Florida Workers' Compensation Retaliation Claim)*

59. Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1 through 48 of this complaint with the same force and effect as if set forth herein.

*60.* Defendant's conduct and commissions constitutes intentional discrimination and unlawful employment practices based upon Workers' Compensation Law. FLA. STAT. § 440.205.

61. Defendant's acts were with malice and with reckless disregard for Plaintiff's statutorily protected rights.

62. This is an action to remedy discrimination and retaliation on the basis of Plaintiff's engaging in protective activity of informing Defendant of a work related injury and seeking workers compensation benefits in the terms, conditions, and privileges of his employment with Defendant in violation of the Workers' Compensation Law. FLA. STAT. § 440.205.

63. Any possible assertion that there was a viable business justification for the Plaintiff's termination, is entirely *pretextual* for Defendant's retaliation and discrimination against him for engaging in a protective activity.

64. The adverse personnel action, Plaintiff's termination, clearly violated Plaintiff's right under the Workers' Compensation Law. FLA. STAT. § 440.205 and such action clearly constituted a prohibited employment practice, contrary to the public policy of the State of Florida.

65. As a result of the Defendant's violations of the Workers' Compensation Law. FLA. STAT. § 440.205, the Plaintiff has been substantially damaged, in that he has lost wages, associated job benefits; and in addition, he has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory demotion that lead to his discharge from Defendant's employment.

66. As a result of being wrongfully and unlawfully retaliatory actions that lead to his discharge from Defendant's employment, Plaintiff has been experiencing anxiety and difficult economic circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

THIRD CAUSE OF ACTION
(FMLA INTERFERENCE)

67. Plaintiff repeats and re-alleges each and every allegation contained in

paragraph 1 through 48 of this complaint with the same force and effect as if set forth herein.

68. Defendant knew of Plaintiff's medical condition and refused to discuss any type of accommodation, FMLA leave or acknowledge that his migraines and respiratory condition were related to his working environment.

69. Defendant had more than sufficient knowledge that Plaintiff's absences were for an FMLA-qualifying reason.

70. Defendant's supervisors, Mr. Milner and Mr. Saldino, nor Defendant's HR department ever notified Plaintiff of his eligibility to take FMLA leave.

71. Mr. Milner knew or should have known that Plaintiff's medical conditions were or could have been qualified under the FMLA as he had extensive personal knowledge of the FMLA and the Defendant's FMLA policies and procedures.

72. Defendant unlawfully interfered with Plaintiff's rights under the Family and Medical Leave Act when it acquired sufficient knowledge that Plaintiff's leave was for an FMLA-qualifying reason.

73. Defendant knew or should have known of Plaintiff's eligibility to take FMLA and refused, international or otherwise, to notify Plaintiff of his FMLA leave rights within five business days.

74. FMLA requires an employer to give an employee whose leave may be covered by FMLA written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations.

75. Defendant refused to notify Plaintiff of his FMLA rights and its refusal was with malice and with reckless disregard for Plaintiff's federally protected rights.

*76.* Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

77. Plaintiff has retained the undersigned attorney to assist him, in the prosecution of this action, and he is obligated to pay said attorney a reasonable fee for his professional services.

*78.* Plaintiff is entitled to recovery of reasonable attorney's fees and costs pursuant to the FMLA.

## COUNT I
### (VIOLATION OF THE FLORIDA PRIVATE SECTOR WHISTLE-BLOWER'S ACT
### *Fla. Stat. Sections* **448.101—448.105**)

79. Plaintiff restates and re-avers the allegations contained within Paragraphs 1—48 of the Complaint, as if fully set forth herein.

80. This is an action for a violation of the Florida Private Sector Whistle-blower Act, *Fla. Stat. Sections* 448.101—448.105.

*Florida Statute* § 448.102 provides in pertinent part, as follows:

> Prohibitions. – An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> * * *
>
> Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.
>
> Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

81. At all material times herein, Plaintiff was an employee of the Defendant; BS, within the meaning of *Florida Statute Section* 448.101(3).

82. At all material times herein, Defendant, BS, was an employer, within the meaning of *Florida Statute Section* 448.101(3).

83. Most recently, Plaintiff was employed as a welder for the Defendant, and he was qualified for the position, which he held with the Defendant, and while serving in this position.

84. In January and February of 2018, Plaintiff reported to Defendant's that his work related illnesses were from the welding fumes and other toxic substances he was being exposed to as a welder.

85. As a result of his working conditions and related health problems, Plaintiff requested the use of a respirator in accordance with applicable OSHA safety regulations.

86. Plaintiff's requests for proper personal protective equipment (PPE) were denied and his objections to continuing to work in an unsafe environment were ignored.

87. Despite the objections of the Plaintiff, and certainly, these objections were based upon the reasonable and good faith beliefs of the Plaintiff, that the applicable federal (OSHA) regulations had been violated, no responsive remedial action was undertaken by BS's management, to cure or remedy the conditions or violations.

88. There was no substantive or reasonable business justification for the termination of Plaintiff's employment, he had not been previously warned of a deficient job performance, nor had he been previously informed that Defendant's supervisory representatives had apparently concluded that he was allegedly unable to discharge his job responsibilities as a welder.

89. Plaintiff reported and objected, according to a reasonable and *bona fide* good faith belief, to the activities, policies and or practices of the Defendant, which violated pertinent regulatory laws, rules and regulations, namely OSHA.

90. Plaintiff's discharge was in close proximity to the aforementioned legal objections, in that Plaintiff was ultimately terminated on March 1, 2018.

91. There was no legitimate business reason, or business justification, for implementing the termination of the Plaintiff from his employment with the Defendant; and Plaintiff's objections to the Defendant's legal violations were consistently and reasonably made, in good faith.

92. The adverse personnel action, the termination of Plaintiff from his employment, as described and set forth above, clearly violated *Florida Statute Section* 448.102(3); and such action clearly constituted a prohibited employment practice, contrary to the public policy of the State of Florida.

93. As a result of the Defendant's violations of the Florida Private Sector Whistleblower Act, the Plaintiff has been substantially damaged, in that he has lost wages, associated job benefits; and in addition, he has sustained compensatory damages, based upon emotional distress, associated with the wrongful, unlawful and retaliatory discharge from employment.

94. As a result of being wrongfully and unlawfully discharged from his employment, Plaintiff has been experiencing anxiety and difficult economic

circumstances, resulting from the unlawful discharge; and the Plaintiff has also sustained continued mental and psychological distress, due to the unlawful dismissal from employment.

95. Plaintiff has retained the undersigned attorney to assist him, in the prosecution of this action, and he is obligated to pay said attorney a reasonable fee for his professional services.

96. Plaintiff is entitled to recovery of reasonable attorney's fees and costs, pursuant to §448.104, *Florida Statutes*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment:

    a) Declaring the acts and practices complained of herein are violation of the, FMLA, ADA, FPSWA, and FWCA;

    b) Enjoining and permanently restraining those violations of the FMLA, ADA, FPSWA, and FWCA;

    c) Directing the Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practice are eliminated and do not continue to affect Plaintiff's employment opportunities;

    d) Directing Defendant to place Plaintiff in the position he would

have occupied but for Defendant's discriminatory treatment of him and make him whole for all earnings he would have received but for Defendant's discriminatory treatment, including but not limited to, wages, pension, and other lost benefits.

    e)    Awarding Plaintiff liquidated damages;

    f)    Awarding Plaintiff compensatory damages;

    g)    Awarding Plaintiff the costs of this action together with a reasonable attorney's fees;

    h)    Granting such other and further relief as the Court deems just and proper in the premises.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: June 25, 2019.    By: */s/ Clayton M. Connors*
    CLAYTON M. CONNORS
    Florida Bar No.: 0095553
    Email: cmc@westconlaw.com
    R. JOHN WESTBERRY
    Florida Bar No.: 244661
    Email: rjw@westconlaw.com
    **WESTBERRY & CONNORS, LLC.**
    4400 Bayou Blvd., Suite 32A
    Pensacola, Florida 32503
    Tel:  (850) 473-0401
    Fax: (850) 473-1388
    Attorney for Plaintiff